UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JEFFREY M. CLARK, on behalf of himself and on behalf of those similarly situated,<br>    *Plaintiffs*,<br><br>    *vs.*<br><br>EDWIN G. BUSS, in his official capacity as Commissioner of the Indiana Department of Correction,<br>    *Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:09-cv-00308-JMS-DML |

## **ORDER**

In this § 1983 action, Plaintiff Jeffrey Clark seeks, on behalf of himself and of other prisoners, (1) a declaratory judgment that the Indiana Department of Correction's ("DOC") Sex Offender Management and Monitoring ("SOMM") Program violates the Fifth Amendment's guarantee against self-incrimination and (2) an injunction prohibiting the DOC from requiring participation in the program.

### **BACKGROUND**[1]

According to Mr. Clark, the DOC requires certain sex offenders, including him, to participate in the SOMM Program toward the end of their incarceration. [Dkt. 37 at 3-6, 16-18; *compare* dkt. 44 at 3, *with* dkt. 46 at 2-4.] Among other things, the program will provide him with psychoeducation to reduce his risk of re-offending. [Dkt. 37 at 5] Although it has three phases, he hasn't yet been directed to participate in any of them. [*Id.* at 17 ¶64.] In Phase I, he will undergo a risk assessment. [*Id.* at 3-4 ¶5.] In Phase II, he will be required to complete a specific number of hours of psychoeducation based upon his risk profile. [*Id.* at 5 ¶10.] In Phase III,

---

[1] Unless otherwise noted, the statements that follow constitute Mr. Clark's version of events.

which will only occur after his release from prison (currently projected to be in April 2012), [*id.* at 17 ¶63], Mr. Clark will receive community-based treatment. [*Id.* at 6 ¶17.]

Once directed to participate, Mr. Clark can defer participation in the SOMM Program if he can show that he has a pending appeal of his conviction or has filed a petition for post-conviction relief. [*Id.* at 9.] Mr. Clark doesn't claim to have a direct appeal pending.[2] He does, however, say that he is "in the process" of filing a petition for post-conviction relief. [*Id.* at 16 ¶61.]

In Mr. Clark's view, Phase II of the SOMM Program will require him (1) to admit to his sex offense of conviction, to which he had pleaded "not guilty" at trial, and (2) to disclose "*all* sex offenses in detail, even offenses for which charges were dropped…and for which [he] was never even charged." [*Id.* at 9 ¶36, 11 ¶37 (original emphasis).] A failure to do so will, if not corrected, result in a reduced ability to earn good-time credit and may, if the refusal continues long enough, result in a loss of up to 180 days of already earned credit. [*Id.* at 12-13 ¶¶40-43.] Good-time credit is valuable to offenders because it permits them to ultimately serve fewer days in prison than their sentence would otherwise require. [*Id.* at 7.] At the high end, good-time credit permits one day of incarceration to count for two days toward the sentence. [*Id.*]

Mr. Clark's Fifth Amendment concerns arise because the SOMM Program doesn't afford him any immunity for the statements he believes he will be compelled to make. [*Id.* at 13 ¶41.][3] Indeed, as the Commissioner notes, SOMM treatment providers "would report a crime [disclosed during treatment] to law enforcement officials if it has not been previously reported." [Dkt. 44 at

---

[2] It appears that Mr. Clark did file an appeal, which resulted in a partial affirmance of the trial court's judgment. *Clark v. State*, 800 N.E.2d 1023 (Ind. Ct. App. 2003) (table). The parties haven't provided any additional details about that appeal.

[3] In relevant part, the Fifth Amendment provides that "[n]o person…shall be compelled in any criminal case to be a witness against himself…." U.S. Const. Amend. V.

5 ¶26.] The Commissioner does, however, contend that Mr. Clark won't be required to disclose any "identifiable information for past victims" as part of the SOMM Program. [*Id.* ¶22.]

## RECONSIDERATION OF CLASS-ACTION STATUS

Previously, the Court certified a stipulated class defined to include "[a]ll persons committed to the Indiana Department of Correction who are, or in the future will be, required to participate in sex offender treatment that requires them to discuss their sexual history and/or admit to the acts resulting in their conviction of any sex offense." [Dkt. 25 ¶2.] In reviewing the parties' cross-motions for summary judgment, it became apparent, however, that the class is not properly defined. For example, it erroneously included among its members those individuals who pleaded guilty to their offense of conviction, even though a defendant who pleads guilty "waive[s] his privilege against compelled self-incrimination" with respect to the offense of conviction. *Hadley v. Buss*, 2010 U.S. App. LEXIS 14870,*4 (7th Cir. 2010) (unpublished) (collecting cases). Likewise, it failed to differentiate between an individual who is asked to discuss uncharged sexual conduct falling outside the statute of limitations—and thus outside the scope of the Fifth Amendment—with one asked to discuss uncharged conduct for which the time for prosecution hasn't yet run. *See Nat'l Acceptance Co. v. Bathalter*, 705 F.2d 924, 927 n.5 (7th Cir. 1983) ("If statutes of limitation have run so as to bar prosecution of all the charges which Bathalter might otherwise face, he would no longer have a valid claim of privilege [against self-incrimination]." (citation omitted)).

Given the problems with the stipulated class, including those identified above, the Court ordered the parties to show cause why the stipulated class shouldn't be de-certified, as permitted by Federal Rule of Civil Procedure 23(c)(1)(C). In his Response, Mr. Clark agrees that the stipulated class should be vacated. [Dkt. 64 at 3.] The Commissioner filed no response to the order to show cause, thereby indicating his agreement that the stipulated class should be vacated. Ac-

cordingly, the Court now **VACATES** the order authorizing class-action status, [dkt. 25], as improvidently entered.

In his response to the order to show cause, Mr. Clark asked that he be given leave to re-define the class in one of two ways, both of which the Court must reject.

In his first proposal, he asks that the class be re-defined to include only those offenders "who are legally entitled to raise a Fifth Amendment 'self-incrimination' claim" during their SOMM participation. [Dkt. 64 at 4.] But because Mr. Clark claims that the Fifth Amendment entitles him to decline to participate in the SOMM Program and because the class definition would only include as members those individuals who actually have viable claims under the Fifth Amendment, the proposed class constitutes an improper "fail-safe" class. *Roe v. Bridgestone Corp.*, 492 F. Supp. 2d 988, 992 n.1 (S.D. Ind. 2007) (Hamilton, J.) (collecting cases).

Alternatively, Mr. Clark seeks to use a class definition that remedies each of the specific problems that the Court identified with the stipulated class. [Dkt. 64 at 4.] That approach won't work either. For one, the statute-of-limitations inquiry is far too particularized to merit class treatment because any single criminal episode could, depending on how it is charged, implicate a host of different criminal statutes—state and/or federal. Even more importantly, however, Mr. Clark's claims aren't ripe for judicial review, thus preventing him from serving as a class representative in this action and thus making his motion to re-define the class definition moot. The Motion to Re-Define the Class is therefore **DENIED**.

### DISCUSSION OF MR. CLARK'S CLAIMS

The United States Constitution limits the jurisdiction of federal courts to "cases" or "controversies," and absent a case or controversy, a federal court may not decide the merits of a dispute, no matter how genuine that dispute may be. U.S. Const. Art. III, §2. The case-or-

controversy requirement involves two distinct inquiries that sometimes closely relate to each other: standing and ripeness. *Smith v. Wisc. Dep't of Agric.*, 23 F.3d 1134, 1141 (7th Cir. 1994) (citation omitted). The standing inquiry asks whether a plaintiff has a sufficiently concrete stake in the litigation such that the plaintiff should be allowed to subject the defendant to the burden of a lawsuit. *Id.* (citation omitted). The ripeness inquiry, by contrast, focuses on when that litigation may begin. *Id.* (citation omitted). The Court will discuss each requirement below.

### A. Standing

"Standing exists when the plaintiff suffers an actual or impending injury, no matter how small; when that injury is caused by the defendant's acts; and when a judicial decision in the plaintiff's favor would redress that injury." *Brandt v. Village of Winnetka*, 612 F.3d 647, 649 (7th Cir. 2010). The Commissioner claims that Mr. Clark lacked the first of those required elements—actual or impending injury—when he filed his Complaint because he had not yet been asked to participate in Phase II of the SOMM Program, the phase during which offenders must discuss their sexual history. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 n.4 (1992) (rejecting argument that subsequent events in the litigation cured the initial lack of redressability because, except in narrow circumstances, standing "depends on the facts as they exist when the complaint is filed" (quotation and emphasis omitted)).[4]

The Court is satisfied that Mr. Clark does, in fact, possess Article III standing. Standing exists for pre-enforcement challenges of governmental regulations if "the probability [of enforcement against the plaintiff in the future] is materially greater than zero." *Brandt*, 612 F.3d at 649. Here, Mr. Clark served an interrogatory on the Commissioner asking when he would be "required to start SOMM participation." [Dkt. 36-1 at 4.] The Commissioner responded that that

---

[4] As of the time of oral argument, Mr. Clark still hadn't been asked to participate in Phase II.

"Mr. Clark could be placed in the SOMM program at any time." [Dkt. 36-1.] Based on that response, the probability that Mr. Clark will, in fact, be asked to participate is materially greater than zero; otherwise, the Court is confident that the Commissioner would have indicated as much in his interrogatory response to avoid being misleading, *see* Fed. R. Civ. Pro. 26(g)(1)(discussing the effect of counsel's signature on a discovery response).[5] And once Mr. Clark is placed in the SOMM program, he will face a concrete injury: giving up what he believes is his Fifth Amendment right to remain silent or else suffer discipline for asserting the right, discipline that may ultimately result in a change in his credit class and an increase in the length of his confinement. [Dkt. 35-2 at 1 ("Offenders who initially refuse to participate in the SOMM Program shall be charged with a violation of Code 116.")]. *See also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007) ("[W]here threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced." (citation and emphasis omitted)).

**B. Ripeness**

To decide whether a pre-enforcement challenge to a regulation is sufficiently ripe for litigation to begin, the Court must consider "(1) the hardship to the plaintiff of denying pre-enforcement review and (2) the fitness of the issues for judicial review." *Smith*, 23 F.3d at 1141. With respect to declaratory judgments in particular—like the one sought here—the Court notes that Congress has authorized trial courts to abstain from issuing declaratory judgments even

---

[5] Because the Court has an independent obligation to ensure it possesses jurisdiction, *e.g., Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986), the Court notes that the other two elements of standing are satisfied as well, even though the Commissioner hasn't challenged them. As to the second, the threatened injury to Mr. Clark is attributable to the Commissioner's disciplinary policy for noncompliance. As to the third, an injunction against requiring Mr. Clark to participate in the SOMM Program would avoid Mr. Clark's threatened injury.

where the dispute is technically ripe for Article III purposes. *MedImmune*, 549 U.S. at 136 (explaining that the Declaratory Judgment Act, 28 U.S.C. § 2201, "has long been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." (quotation omitted)).

Having reviewed the parties' cross-motions for summary judgment, which are primarily addressed to the merits, the Court concludes that Mr. Clark's challenge to the constitutionality of the SOMM Program is not yet sufficiently ripe for judicial review. With respect to the first prong of the ripeness analysis, hardship, several facts militate against its applicability. Mr. Clark admits that he will be excused from the SOMM Program during the pendency of any post-conviction relief that he may file. [Dkt. 37 at 9 ¶35.] As of the time he filed his motion for summary judgment, Mr. Clark indicated that he was "in the process of filing a petition for Post-Conviction Relief." [Dkt. 38 ¶3.] If that petition is ultimately filed and granted, he could be acquitted of the charges that made him eligible for the SOMM Program. Thus, deferring consideration of his claim may permit the Court to avoid having to make a constitutional evaluation of the SOMM Program, a desirable outcome, *see Rehman v. Gonzales*, 441 F.3d 506, 508 (7th Cir. 2006) ("Non-constitutional arguments always come first; constitutional contentions must be set aside until their resolution is unavoidable."). Furthermore, assuming (1) that he is ultimately subjected to Phase II of the SOMM Program, (2) that he asserts the Fifth Amendment as a defense to discipline for non-participation, (3) that the prison authorities conclude that the Fifth Amendment doesn't apply, Mr. Clark has easy access to judicial review of that decision. He may pursue a petition for habeas corpus. *See Hadley*, 2010 U.S. App. LEXIS 14870 (unpublished) (affirming denial of habeas corpus petition that alleged that discipline for refusing to participate in the SOMM Program violated the Fifth Amendment right against self-incrimination

under the circumstances). Even if the Commissioner were to improperly compel him to actually make statements before judicial review could occur, the exclusionary rule in future prosecutions may also remedy the harm. *See In re Folding Carton Antitrust Litigation*, 609 F.2d 867, 872 n.11 (7th Cir. 1979) ("[I]f a district court errs in making a ruling on privilege an after-the-fact exclusionary rule will apply to prevent the introduction of that evidence against the witness. Of course, this exclusionary rule is solely remedial and cannot be used as a rationale to support a judicial decision which contravenes the fifth amendment's protection." (citation omitted)).

Delaying judicial consideration of Mr. Clark's constitutional challenge will also facilitate effective judicial review, which implicates the second prong of the ripeness analysis. As indicated above, the parties dispute exactly how much an offender must disclose in Phase II to be compliant with the SOMM Program. In support of his motion for summary judgment, Mr. Clark argues that Phase II, as described on paper, requires full and detailed disclosure of sex offenses that haven't resulted in a conviction. [Dkt. 37 at 12 ¶38.] The Commissioner, in support of his own motion for summary judgment, argues that Phase II—as actually implemented—requires far less disclosure. [Dkt. 44 at 5 ¶¶21-23.][6] Because the privilege can only ever apply to potentially incriminating questions—as opposed to providing a "carte blanche…to refuse to answer questions," *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 663 (7th Cir. 2002)— waiting to see exactly what information is being demanded of Mr. Clark will better enable the

---

[6] If the Court had to reach the merits here, that factual dispute might well foreclose summary judgment. In assessing each party's motion, the Court would be obligated to resolve factual disputes against that party. *R. J. Corman Derailment Servs., L.L.C. v. Int'l Union*, 335 F.3d 643, 647-648 (7th Cir. 2003).

Court to consider the contours of any claimed Fifth Amendment privilege. Moreover the nature and extent of any discipline imposed may also better inform the Court's decision.[7]

### CONCLUSION

The Court **VACATES** the order authorizing class-action status, [dkt. 25], as improvidently entered. Mr. Clark's motion to re-define the class, [dkt. 64], is **DENIED AS MOOT**. Because the individual claim that Mr. Clark has filed is not ripe for judicial review, the cross-motions for summary judgment, [dkts. 36, 43], are also **DENIED AS MOOT**.

10/03/2010

                                                                   Hon. Jane Magnus-Stinson, Judge
                                                                   United States District Court
                                                                   Southern District of Indiana

**Distribution via ECF only:**

David A. Arthur
INDIANA OFFICE OF THE ATTORNEY GENERAL
David.Arthur@atg.in.gov

Kenneth J. Falk
ACLU OF INDIANA
kfalk@aclu-in.org

Betsy M. Isenberg
INDIANA OFFICE OF THE ATTORNEY GENERAL
Betsy.Isenberg@atg.in.gov

Jacquelyn Bowie Suess
ATTORNEY AT LAW

---

[7] *See McKune v. Lile*, 536 U.S. 24 (2002) (argued by both parties herein on the issue of what constitutes compulsion for Fifth Amendment purposes) *McKune* held that a loss of privileges and relocation to a maximum security facility were not sufficient to constitute compulsion.

jsuess1417@gmail.com